COMMONWEALTH vs. WAYNE CHAPMAN.

Essex. December 8, 2004. - April 14, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Collateral Estoppel. Practice, Civil,* Collateral estoppel.

Where the Commonwealth petitioned in 2004 to commit as a sexually danger-
ous person a criminal defendant who in 1991 had been judged not a sexu-
ally dangerous person, the doctrine of collateral estoppel did not bar the
Commonwealth's 2004 petition, in that it set forth a sufficient factual basis
to support the Commonwealth's allegation of present sexual dangerous-
ness, and the judge therefore prematurely dismissed the petition. [20-25]
MARSHALL, C.J., dissenting, with whom IRELAND, J., joined.

PETITION filed in the Superior Court Department on September
16, 2004.

A motion to dismiss was heard by *Elizabeth M. Fahey*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Valerie A. DePalma*, Assistant District Attorney, for the
Commonwealth.

*John S. Day* for the defendant.

*David Hirsch*, Committee for Public Counsel Services, for
Committee for Public Counsel Services, amicus curiae, submit-
ted a brief.

CORDY, J. The Commonwealth appeals from an order of a
Superior Court judge dismissing its petition to commit Wayne
Chapman as a sexually dangerous person, filed pursuant to
G. L. c. 123A, §§ 12-16 (2004 petition). The judge ruled that
the 2004 petition represented an impermissible collateral attack
on a 1991 judgment that Chapman was not a sexually danger-
ous person. The Commonwealth contends that collateral estop-
pel principles are inapplicable because its current petition
presents a factual issue (Chapman's present sexual dangerous-
ness) different from the one litigated in 1991 (Chapman's sexual

dangerousness at that time), and because it intends to introduce evidence different from what was available in 1991. We conclude that the doctrine of collateral estoppel does not bar the Commonwealth's petition, that the petition set forth a sufficient factual basis to support the Commonwealth's allegation of present sexual dangerousness, and that the judge prematurely dismissed the petition. Therefore, we vacate the judge's order and remand the matter to the Superior Court for a probable cause hearing pursuant to G. L. c. 123A, § 12 (c).

1. *Background.* In September, 1977, Chapman was convicted of two counts of rape of a child and was sentenced to a prison term of from fifteen to thirty years. Shortly thereafter, he pleaded guilty to counts of sodomy, open and gross lewdness, assault with intent to commit a felony, unnatural acts with a child under fourteen years, and indecent assault and battery on a child under fourteen years, for which he was sentenced to a prison term of from six to ten years. In both cases, the evidence demonstrated that Chapman had lured young boys into wooded areas under the pretext of searching for his missing dog. Once there, he sexually assaulted them.

In November, 1977, Chapman was found to be a sexually dangerous person and, the following March, was transferred from prison to the Massachusetts Treatment Center (treatment center).[1] In 1991, Chapman filed a petition for release from the

---

[1] In 1977, G. L. c. 123A provided that, "[i]f a prisoner under sentence in any jail, house of correction or prison . . . appear[ed] to the sheriff . . . or to the district attorney for the district in which such prisoner was sentenced to be a sexually dangerous person and in need of the care and treatment provided at the center, such officer [was permitted to] notify the commissioner of mental health, who [would] thereupon cause such prisoner to be examined by a psychiatrist at the institution wherein he [was] confined." G. L. c. 123A, § 6, as appearing in St. 1958, c. 646, § 1. If the examining psychiatrist determined that the prisoner might be sexually dangerous, the sheriff or the district attorney filed a motion to commit the prisoner to the treatment center for an observation period not to exceed sixty days. *Id.* If the prisoner was subsequently determined to be not sexually dangerous by his examining psychiatrists, the judge was required to "order such prisoner to be reconveyed to the institution wherein he was serving his sentence, there to be held until the termination of his sentence." *Id.* If the examining psychiatrists determined that the prisoner was sexually dangerous, a hearing was held. On a finding of sexual dangerousness, the judge committed the prisoner to the center "for an

treatment center pursuant to G. L. c. 123A, § 9.[2] After a two-day evidentiary hearing, the judge found that Chapman's convictions of rape of a child "culminated a [ten] year history of child abuse in Massachusetts, Rhode Island and Pennsylvania. [Chapman's] sexual activities involved attraction to blond, blue eyed hairless boys, [ten] or [eleven] years of age. It started with observing them naked and progressed to fellatio and sodomy. In all there were about [fifty] victims." This finding, and Chapman's apparent diagnosis as a pedophile, were not contested issues at the hearing.[3] What was at issue was whether the treatment Chapman had received at the treatment center had tempered his pedophilia such that he was no longer sexually dangerous. On this subject, four "qualified examiners" testified.[4] The Commonwealth called Dr. David Jones and Dr. Lisa Brooks. Both opined that Chapman had made considerable progress with treatment. Dr. Jones further testified, however, that Chapman remained a sexually dangerous person based on "the repetitive history and fixation with up to [fifty] incidents with boys who fit the description which attracted [him], his lack

---

indeterminate period of a minimum of one day and a maximum of such person's natural life" or made "such other disposition upon the recommendation of the department of mental health consistent with the purpose of treatment and rehabilitation." *Id.*

In 1990, §§ 3-6 and 7 of G. L. c. 123A were repealed. St. 1990, c. 150, § 304. On September 10, 1999, the Legislature enacted emergency legislation, St. 1999, c. 74, §§ 3-8, adding new procedures for adjudicating persons as sexually dangerous. A commitment petition may now only be brought by the district attorney or the Attorney General and only at the conclusion of a person's sentence. G. L. c. 123A, § 12.

[2] The version of G. L. c. 123A, § 9, in effect at the time, provided, in relevant part: "Any person committed to the center shall be entitled to file a petition for examination and discharge once in every twelve months." G. L. c. 123A, § 9, as amended through St. 1989, c. 555.

[3] Only the judge's findings and not the full record of the 1991 hearing were included in the record on appeal.

[4] In 1991, a "[q]ualified examiner" was defined as "a physician who is licensed pursuant to section two of chapter one hundred and twelve who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed pursuant to sections one hundred and eighteen to one hundred and twenty-nine of chapter one hundred and twelve; provided that the examiner has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by, and satisfies the qualifications required by, the department of mental health." G. L. c. 123A, § 1, inserted by St. 1985, c. 752, § 1.

of empathy for his victims, lack of true remorse, his failure to understand the nature of his obsession and the absence of internalized control." Similarly, Dr. Brooks, who had interviewed Chapman for the Commonwealth five times in the preceding two years, concluded that Chapman remained sexually dangerous. Dr. Richard Ober testified on behalf of Chapman and concluded that Chapman was not sexually dangerous because he understood his behavioral problems, expressed remorse and sadness for his victims, and had developed an ability to maintain significant relationships with adults both within and without the treatment center. Dr. Eric Sweitzer, who had worked with Chapman in weekly, individual therapy sessions for approximately two years, testified that although Chapman might still experience temptation to commit sexual offenses, he was not then sexually dangerous because the intensity of those temptations had decreased and Chapman had learned strategies to manage his anger and had "an excellent support group in his Christian Religion."

The hearing judge "adopt[ed] the opinions" of Dr. Ober and Dr. Sweitzer and ruled that the Commonwealth had failed to prove beyond a reasonable doubt that Chapman was then a sexually dangerous person. He ordered Chapman discharged from the treatment center and transferred back to prison to serve the remainder of his sentence.[5]

On September 16, 2004, approximately one month before Chapman's anticipated release from prison, the Commonwealth filed its 2004 petition in which it sought a temporary order committing Chapman to the treatment center pending the disposition of the petition, see G. L. c. 123A, § 12 (e); a hearing to determine whether there is probable cause to believe that Chapman is a sexually dangerous person, see G. L. c. 123, § 12 (c); and, if so, a sixty-day commitment to the treatment center for evaluation by two qualified examiners, see G. L. c. 123A, § 13 (a). Among the facts alleged in the 2004 petition

---

[5]Under the version of G. L. c. 123A in effect in 1991, an inmate committed to the treatment center prior to the completion of his sentence was returned to prison to complete the remainder, if any, of his original sentence on a finding that he was no longer a sexually dangerous person. Commonwealth v. Rodriguez, 376 Mass. 632, 640 (1978).

was Chapman's refusal to participate in sex offender treatment since 1991. Also included was a written evaluation by Dr. Robert Joss (dated September 10, 2004), who, after a review of thirty-six documents and reports pertinent to Chapman's criminal, psychiatric, and institutional history, opined that Chapman suffered from a form of pedophilia that had proved to be particularly resistant to change.[6]

In assessing whether Chapman's pedophilia rendered him currently sexually dangerous, Dr. Joss considered what he labeled "static" factors (over which a person has no control, such as prior history) and "dynamic" factors ("over which [a] person may exhibit some control and to which treatment programs are addressed") relevant to analyzing the risk of reoffending. With respect to the dynamic factors, Dr. Joss found that (1) the type of treatment Chapman participated in at the treatment center up until 1991 ("individually oriented and psychodynamically based") has since proved to be generally ineffective with sex offenders; and (2) after Chapman's transfer back to prison he had been offered but refused treatment that was "cognitive — behaviorally oriented and group based" and that would normally be recommended where "arousal associated with pedophilia is noted to be a continuing problem." Dr. Joss's evaluation also noted that subsequent to his transfer from the treatment center to prison in 1991, Chapman had attended religious services for the purpose of transporting contraband for other inmates and had been disciplined for assaulting another inmate.

Based on his review of Chapman's history and an analysis of the static and dynamic factors relating to his likelihood of reoffending, Dr. Joss concluded that Chapman posed, at best, a "moderate risk" and, at worst, a "high risk" to reoffend sexually.[7] Ultimately, "[b]ased upon the information available [to him]," it was Dr. Joss's expert opinion that Chapman was

---

[6]Dr. Joss did not interview Chapman for the evaluation.

[7]Dr. Joss used "actuarial instruments" in estimating Chapman's risk of reoffending: "Static-99" (developed by the office of the Solicitor General of Canada), which employs ten static risk factors and resulted in a predicated risk of recidivism of fifty-two per cent within fifteen years for persons with Chapman's characteristics; and MnSOST-R (Minnesota sex offender screening tool — revised), which employs twelve static and four dynamic factors and resulted

currently a sexually dangerous person as defined in G. L. c. 123A, § 1, in that "he is likely to engage in sexual offenses if not confined to a secure facility."

On October 5, 2004, Chapman moved to dismiss the Commonwealth's petition on collateral estoppel grounds. On October 14, 2004, the judge allowed the motion, ruling that the 2004 petition was a collateral attack on the 1991 adjudication because (1) the Commonwealth's 2004 petition was "based only on factors that were present" in 1991, except Chapman's refusal to participate in sex offender treatment since that adjudication; and (2) such refusal did not amount to "additional evidence" on which a finding of current sexual dangerousness could properly be based. Consequently, the judge concluded that a finding of sexual dangerousness on the basis of the 2004 petition would violate due process in light of this court's holding in *Commonwealth* v. *Travis*, 372 Mass. 238, 249 (1977).

The Commonwealth filed an emergency motion with the Appeals Court to stay Chapman's release pending appeal. A single justice of the Appeals Court expressed "serious doubt" as to the correctness of dismissing the petition and stayed the motion judge's order.[8] On October 19, 2004, after a hearing on the matter, the single justice extended the stay and the temporary detention of Chapman and ordered an expedited appeal of the motion to dismiss before a panel of the Appeals Court. We transferred the case here on our own motion.

2. *Discussion.* We have previously held that although the double jeopardy clause of the Fifth Amendment to the United States Constitution does not apply to G. L. c. 123A commitment proceedings, "as a matter of fundamental fairness under the due process clause of the Fourteenth Amendment to the United States Constitution, a finding that an individual is no longer sexually dangerous must be as immune from subsequent or collateral attack as is a criminal judgment of acquittal." *Com-*

---

in a predicated risk of recidivism of between twenty-nine per cent and sixty-six per cent within six years.

[8]The single justice also committed Chapman to the treatment center pending further order of the Appeals Court.

*monwealth* v. *Travis, supra* at 249.[9] See *Hill, petitioner,* 422 Mass. 147, 155, cert. denied, 519 U.S. 867 (1996) ("Due process in this context implies an aspect of constitutionally compelled res judicata"). "Collateral estoppel is available to a defendant as a shield against a subsequent attempt by the government to litigate an issue necessarily decided in previous litigation between the defendant and the government . . . where there is (1) a common factual issue; (2) a prior determination of that issue in litigation between the same parties; and (3) a showing that the determination was in favor of the party seeking to raise the estoppel bar." *Krochta* v. *Commonwealth,* 429 Mass. 711, 715-716 (1999). Chapman contends that the principles of collateral estoppel preclude the Commonwealth from relitigating the issue of Chapman's sexual dangerousness because the 1991 adjudication constituted a final determination between the same parties on the common factual issue of that dangerousness. We conclude, however, that the Commonwealth's petition does not seek to relitigate an issue previously adjudicated.

In *Commonwealth* v. *Travis, supra* at 249 n.5, we noted that the protection afforded a determination made under G. L. c. 123A "applies only to circumstances in which there has been a finding that an individual is not sexually dangerous *at that particular time* and a subsequent or collateral attack is made on that finding as it relates to the individual's status *at the time the finding was made*" (emphasis added).[10] In the context of the present case, the Commonwealth would be precluded from

---

[9]In *Commonwealth* v. *Travis,* 372 Mass. 238, 239 (1977), Travis was adjudged no longer sexually dangerous in 1973 and was granted conditional release from the treatment center, based on the version of G. L. c. 123A, § 9, then in effect. G. L. c. 123A, § 9, as appearing in St. 1966, c. 608 (permitting court to release sexually nondangerous persons on conditions such as continued treatment). In 1975, the same judge who issued the 1973 judgment vacated his prior finding and issued a new order, finding, inter alia, that Travis in fact had been a sexually dangerous person at the time of the prior hearing. *Id.* at 241. We held that the judge could not validly vacate the prior finding, even though the version of G. L. c. 123A in effect at the time permitted the judge to recommit Travis for breaching the conditions of his release. *Id.* at 245, 251.

[10]We further stated: "Our reasoning here would not bar subsequent statutorily and constitutionally valid proceedings under this chapter to determine an individual's status at the time of the subsequent proceedings; for example, a person found not sexually dangerous after conviction of a

subsequently challenging the judge's 1991 finding, for example, on the basis of newly discovered evidence demonstrating that Chapman was in fact sexually dangerous at the time the judge found he was not. Similarly, it could not seek to vacate the judgment based on evidence that the judge had made a mistake in 1991 due to the evolving and inexact nature of psychiatric prediction. See *id.* at 249, 250 ("The not sexually dangerous finding is an unconditional adjudication of status at the time of the hearing, and as such may not be reevaluated in light of subsequent events"). However, neither the doctrine of collateral estoppel nor substantive due process prevents a judge from determining whether probable cause exists to find that Chapman (many years later) is *presently* a sexually dangerous person on a showing of sufficient facts.[11] See *Commonwealth* v. *Bruno,* 432 Mass. 489, 503 (2000) ("commitment proceedings turn on a person's current mental condition"). Accordingly, we examine the facts set forth by the Commonwealth to determine whether its petition seeks merely to relitigate Chapman's status in 1991, or whether it is sufficient to support the allegation of present sexual dangerousness and can proceed properly to the next stage along the statutorily prescribed course.[12]

---

[statutorily enumerated sexual] offense might later be validly adjudicated to be sexually dangerous after conviction of a subsequent [statutorily enumerated sexual] offense." *Commonwealth* v. *Travis, supra* at 249 n.5. Chapman argues that this passage implies that the Commonwealth is barred from relitigating the issue of Chapman's sexual dangerousness unless he is convicted of a subsequent sexual offense. We decline to interpret this "example" as the *only* circumstance in which a person adjudicated not sexually dangerous at one point in time could be validly adjudicated sexually dangerous at a later time on the basis of a subsequent petition.

[11]The Commonwealth also argues that the doctrine of collateral estoppel is inapplicable because the current statutory definition of "sexually dangerous person" differs from the definition in effect at the time of the 1991 adjudication. Specifically, the Commonwealth contends that the addition of the terms "mental abnormality" and "personality disorder" under the 1999 amendments to G. L. c. 123A, § 1, present a different legal issue. We disagree. We have previously held that the pre-1999 version of the statute, which "does not explicitly mandate a determination of 'mental illness,' " nonetheless implicitly "requires a finding that the individual suffer from a present mental condition that creates a likelihood that the individual will engage in sexually dangerous conduct in the future." *Dutil, petitioner,* 437 Mass. 9, 14-15 (2002).

[12]To file a petition alleging that a prisoner is a sexually dangerous person,

In *Commonwealth* v. *Bruno, supra* at 505-506, we held that the Commonwealth was not estopped from seeking to commit Bruno where its petition contained evidence of conduct that postdated a determination made by two qualified examiners that Bruno was not sexually dangerous.[13] As we noted, "due to the additional evidence contained in the current commitment petition, the issue therein, whether [the defendant] is currently a sexually dangerous person, is quite different from whether he was sexually dangerous [in the past]." *Id.* at 506. See *Gomes* v. *Gaughan*, 471 F.2d 794, 797 (1st Cir. 1973) (rejecting petitioner's collateral estoppel argument where "issue before the court in [the most recent proceedings] (his then propensities) was not the same as that in [the prior proceedings]; nor was the 'evidence' ").[14] While we might agree that if the Commonwealth's 2004 petition had relied solely on Dr. Joss's opinion that the type of treatment Chapman received prior to 1991 has proved to be an ineffective treatment for sex offenders, it would be insufficient to overcome the doctrine of collateral estoppel with respect to the 1991 adjudication that was based largely on expert testimony regarding the success of that form of treatment on Chapman's condition. That, however, is not this case.[15] Here, the Commonwealth's petition seeks a

the Commonwealth need only "stat[e] sufficient facts to support such allegation," G. L. c. 123A, § 12 (*b*), that is, that the prisoner has been convicted of a sexual offense and that "it is 'likely' that [he] possesses the requisite mental condition under the statute." *Commonwealth* v. *Bruno*, 432 Mass. 489, 503 (2000), quoting G. L. c. 123A, § 12 (*b*).

[13]In *Commonwealth* v. *Bruno, supra* at 505, we noted that Bruno was never adjudged to be no longer sexually dangerous. Rather, on the conclusion of two qualified examiners (made under the version of G. L. c. 123A that predated the 1990 repeal) that Bruno was not a sexually dangerous person, he was released from commitment and returned to prison to serve the remainder of his sentence.

[14]The court in *Gomes* v. *Gaughan*, 471 F.2d 794, 797 (1st Cir. 1973), cautioned that, although "not double jeopardy under the Fifth Amendment [to the United States Constitution], the oppressive misuse of multiple commitment proceedings would doubtless be a violation of due process." This view was subsequently expressed in *Commonwealth* v. *Travis, supra* at 246-250. We do not, however, find the facts of this case to present an "oppressive misuse of multiple commitment proceedings."

[15]We do not mean to suggest that such evidence would not be relevant to assessing the effect of Chapman's subsequent decision not to participate in more effective forms of treatment after 1991.

present determination of sexual dangerousness predicated not only on Chapman's criminal history and sexual misconduct prior to 1991, but also on conduct engaged in thereafter. Most importantly, Chapman, although an admitted pedophile, chose not to participate in sex offender treatment programs appropriate to his condition during the thirteen years subsequent to his release from the treatment center.[16] Chapman argues that he was not obligated to continue with sex offender treatment after the 1991 adjudication, and therefore, his declining such treatment is not conduct sufficient to support a showing of sexual dangerousness. The issue is not whether Chapman was "obligated" to participate in sex offender treatment programs, but rather the effect of his failure to participate in such programs on the current state of his mental abnormality and therefore his sexual dangerousness. This failure is particularly relevant to Chapman's present ability to control a mental abnormality (pedophilia) that otherwise creates a substantial risk of additional sexual offenses, where his own expert witness (and treating therapist) testified in 1991 that Chapman might "still have inclinations and temptation" but had reduced their intensity through then ongoing therapy. These facts, set forth in the 2004 petition and elaborated on in Dr. Joss's evaluation incorporated therein, are sufficient to "reject [Chapman's] claim that the Commonwealth is precluded from initiating commitment proceedings against him." *Commonwealth* v. *Bruno, supra* at 506 (rejecting defendant's collateral estoppel argument where defendant refused sex offender therapy and violated parole as result of nonsexual offenses committed after defendant was deemed no longer sexually dangerous). We therefore conclude that it was error to dismiss the petition.

Finally, with respect to Chapman's custodial status, if a

---

[16]While incarcerated and subsequent to 1991, Chapman was also disciplined for assaulting a fellow inmate (in 1998), and attended religious services for the purpose of transporting contraband for other inmates. Chapman notes, however, that there is nothing in his prison disciplinary record that indicates sexual misconduct. Chapman's prior criminal history, however, indicates a predilection for young boys. As we stated in *Hill, petitioner*, 422 Mass. 147, 157, cert. denied, 519 U.S. 867 (1996), "[e]xamples of recent conduct showing sexual dangerousness may often be lacking where the individual's dangerous disposition is of a sort that there will be no occasion for that disposition to manifest itself in a secure environment."

person is scheduled to be released from prison "prior to the court's probable cause determination," the court may "temporarily commit such person . . . pending disposition of the petition," *id.* at 495, if the Commonwealth can make "a sufficient showing based on 'evidence before the court,' that the person named in the petition is sexually dangerous . . . and . . . is likely to commit future harm." *Id.* at 503-504, quoting G. L. c. 123A, § 12 (*e*). This threshold has been met in the present petition on the basis of the facts alleged and Dr. Joss's detailed expert evaluation of Chapman's present dangerousness. Consequently, the petitioner is to be detained pursuant to G. L. c. 123, § 12 (*e*), pending a probable cause hearing.[17]

The order is vacated and the case is remanded to the Superior Court for further proceedings pursuant to G. L. c. 123A, § 12 (*c*).

*So ordered.*

MARSHALL, C.J. (dissenting, with whom Ireland, J., joins). "[A]s a matter of fundamental fairness under the due process clause of the Fourteenth Amendment to the United States Constitution, a finding that an individual is no longer sexually dangerous must be as immune from subsequent or collateral attack as is a criminal judgment of acquittal."[1] *Commonwealth* v. *Travis*, 372 Mass. 238, 249 (1977) (*Travis*). In 1991, under the then existing provisions of G. L. c. 123A, § 9,[2] a judge in the Superior Court found that the Commonwealth had "not met its

---

[17]Chapman may challenge the Commonwealth's showing and his temporary commitment and move for relief therefrom at any time prior to the probable cause determination. G. L. c. 123A, § 12 (*e*).

[1]The Massachusetts Constitution provides similar protection. See art. 1 of the Declaration of Rights, as amended by art. 106 of the Amendments to the Massachusetts Constitution.

[2]In 1991, G. L. c. 123A, § 9, as amended through St. 1989, c. 555, provided that persons detained at the treatment center could "file a petition for examination and discharge once in every twelve months. . . . Unless the court finds that such person remains a sexually dangerous person, it shall order such person to be discharged from the treatment center. Discharge from the center shall not operate to terminate the sentence given concurrently with the commitment, or any other unexpired sentence."

burden of proving, beyond a reasonable doubt, that [Wayne Chapman] is a sexually dangerous person."[3] Following the 1991 proceedings, Chapman was transferred from the Massachusetts Treatment Center (treatment center) to prison, to serve the remainder of his sentence, which he completed in 2004. Approximately one month before Chapman's scheduled release, the Commonwealth petitioned to recommit Chapman to the treatment center as a sexually dangerous person. G. L. c. 123A, § 12 (b). Because the Commonwealth's petition and the supporting expert report impermissibly ignore the preclusive effect of the 1991 finding that Chapman was not sexually dangerous, and point to no evidence of Chapman's conduct after the 1991 judicial determination that would, even if proved, establish probable cause to "believe that [Chapman] is a sexually dangerous person," G. L. c. 123A, § 12 (c), I conclude that the motion judge correctly dismissed the petition. I respectfully dissent.

I do not question the court's holding that, prior to Chapman's release from prison in 2004, the Commonwealth could again petition to commit Chapman as a sexually dangerous person pursuant to G. L. c. 123A. The issue "whether [Chapman] is currently a sexually dangerous person, is quite different from whether he was sexually dangerous in [1991]." *Commonwealth v. Bruno*, 432 Mass. 489, 506 (2000) (*Bruno*). See *Travis, supra* at 249 n.5 (finding individual is not sexually dangerous at particular time "would not bar subsequent statutorily and constitutionally valid proceedings under this chapter to determine an individual's status at the time of the subsequent proceedings"). My concern stems from the Commonwealth's impermissible attack on the 1991 judicial determination, the Commonwealth's substantial reliance in its petition and supporting materials on facts that may not be considered because the 1991 decision must be given preclusive effect, and on the absence of any other relevant facts in its petition concerning Chapman's conduct since that determination in 1991.

In *Bruno, supra* at 504-506, this court reaffirmed that a judicial determination of a person's sexual dangerousness must

---

[3]The Commonwealth apparently did not appeal from the decision. See *Hill, petitioner*, 422 Mass. 147, 155, cert. denied, 519 U.S. 867 (1996).

be given preclusive effect: *Bruno* did not weaken in any respect the central holding in *Travis* that "a finding that an individual is no longer sexually dangerous must be as immune from subsequent or collateral attack as is a criminal judgment of acquittal." *Travis, supra* at 249. See *Gomes* v. *Gaughan*, 471 F.2d 794, 797 (1st Cir. 1973) ("the oppressive misuse of multiple commitment proceedings would doubtless be a violation of due process"). In *Bruno*, unlike here, the Commonwealth had new evidence of the defendant's conduct following the prior proceedings sufficient to support a finding of probable cause of sexual dangerousness. Aggravated rape was the underlying conviction against Lawrence Bruno. After his release from incarceration, Bruno was arrested while on parole for, among other things, "assaulting his girl friend with whom he lived," new conduct suggestive of sexual dangerousness. *Bruno, supra* at 491 n.2, 506. Thus in *Bruno*, we recognized that the *subsequent* conduct of a person not found to be sexually dangerous may be grounds for later G. L. c. 123A proceedings. See *id.* at 505, 506, citing *Travis, supra* at 249 n.5.[4]

As contrasted to the circumstances in *Bruno*, the Commonwealth in this case, in my view, has not alleged any facts of Chapman's conduct since 1991 to meet even the low threshold of G. L. c. 123A, § 12 (*b*). Stripped of its revisitation of the 1991 determination,[5] the Commonwealth's allegations fall into three categories, none of which, alone or in combination, is

---

[4]In *Commonwealth* v. *Bruno*, 432 Mass. 489, 504-506 (2000), we also held that the Commonwealth was not barred by res judicata or collateral estoppel from filing a G. L. c. 123A petition in the absence of an earlier judicial finding that the defendant was not sexually dangerous. In that case, the Commonwealth had sought to commit Bruno pursuant to G. L. c. 123A, but had ceased pursuing that objective before a final judicial determination. Our ruling to that effect has clear analogues in criminal law. A dismissal without prejudice for lack of evidence may enter in a criminal case after the Commonwealth has lawfully detained a suspected criminal pursuant to an indictment. Double jeopardy does not attach, of course, until the trial itself has begun. See *Crist* v. *Bretz*, 437 U.S. 28 (1978); *Commonwealth* v. *DeFuria*, 400 Mass. 485, 487 (1987) (at bench trial, jeopardy attaches when first witness sworn); *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 18-19 (1923) (jeopardy attaches when jury empaneled).

[5]The report of the Commonwealth's expert, Dr. Joss, is replete with statements that cannot be interpreted as anything other than an attack on the 1991 determination. By way of example, one of his summary conclusions states:

"sufficient" under G. L. c. 123A, § 12 (*b*). First, the Commonwealth asserts that Chapman's sexual dangerousness may be shown through "the inefficacy of the treatment that he received before 1991 and the discouraging recidivism rate of those who also received such treatment." I agree with the court that such evidence *cannot* be used to prove that Chapman is now sexually dangerous, for to hold otherwise would be to permit the very attack on the earlier judicial determination that *Travis* and *Bruno* expressly forbid. *Ante* at 21-22.

Evidence concerning the efficacy of treatment that Chapman received before 1991 is not evidence of his conduct since 1991; it establishes only that new science suggests that the Superior Court judge who in 1991 determined that the Commonwealth had not met its burden of proving Chapman sexually dangerous, may have come to the wrong conclusion. Implicit in the Commonwealth's theory that new scientific evidence is relevant to a determination whether Chapman is now sexually dangerous is an assumption that the Commonwealth may seek to challenge the findings of an earlier petition whenever it can proffer expert evidence that undermines an earlier judicial determination. Expert opinions and scientific scholarship concerning predictive factors of sexually dangerous recidivism are in a state of constant flux. See R.K. Hanson & K. Morton-Bourgon, Predictors of Sexual Recidivism: An Updated Meta-Analysis (2004). See also *Kansas* v. *Hendricks*, 521 U.S. 346, 360 n.3 (1997) ("psychiatric professionals are not in complete harmony in casting pedophilia, or paraphilias in general, as 'mental illnesses' "). It will almost always be possible to rely on "new" science to attack an earlier determination of sexual dangerousness. Here, permitting the Commonwealth to rely on Dr. Joss's concerns about the correctness of the 1991 determination would be contrary to our rulings in *Travis* and *Bruno*, and would provide an easy avenue for the "oppressive misuse of multiple [sexually dangerous person] commitment proceedings [that] would doubt-

"Notwithstanding the Court's finding in December 1991 regarding Mr. Chapman's sexual dangerousness, I note that since that time research that has taken place on treatment effectiveness of the type of treatment Mr. Chapman was receiving and sexual recidivism of those released from the Massachusetts Treatment Center is particularly discouraging for pedophilic offenders."

less be a violation of due process." *Gomes* v. *Gaughan*, *supra* at 797. See *Turner* v. *Superior Court*, 105 Cal. App. 4th 1046, 1061-1062 (2003) (holding that experts share State's burden of showing new evidence subsequent to earlier judicial determination that defendant was not subject to commitment as sex offender). As the motion judge realized, if the Commonwealth were permitted to present expert opinion to challenge the basis of the 1991 determination, "everyday being a new day, there would be no end to the number of [p]etitions the Commonwealth could file as to a respondent's sexual dangerousness."

The Commonwealth also cites Chapman's prison disciplinary record as supporting its allegation that he is a sexually dangerous person. As the court recognizes, the disciplinary record contains no such support. *Ante* at 24 n.16. The Commonwealth conceded that "Chapman's disciplinary history is non-eventful."[6] "Non-eventful" prison behavior is not probative of sexual dangerousness. See *Addington* v. *Texas*, 441 U.S. 418, 426-427 (1979) ("At one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable. Obviously, such behavior is no basis for compelled treatment and surely none for confinement"). If Chapman's record of prison disciplinary actions was sufficient to support a determination that there is probable cause to believe Chapman is sexually dangerous, it is hard to conceive of *any* circumstance in which the Commonwealth could not meet its burden. There was no showing that, in the more that thirteen years since he was determined to be not sexually dangerous, Chapman has engaged in any

___

[6] Of Chapman's conduct since 1991, Dr. Joss's nine-page report contains *only* the following: "A recent Classification Report (May, 2004) indicated that Mr. Chapman had been identified for an Alternatives to Violence and Sex Offender Treatment Programs neither of which he participated in. He did complete a Transition Plan but it is noteworthy for having expunged information related to risk situations. He has been employed in the maintenance department of the [Department of Correction]. He has had some minor and a few major disciplinary reports including one for an assault on another inmate in 1998. Additionally he used attendance at Protestant Services to transport contraband for other inmates."

misconduct of a sexual nature.[7] His prison disciplinary record is anodyne.

Third, the Commonwealth argues that Chapman's failure to enter into sex offender treatment since 1991 is probative of sexual dangerousness. It is here — and only here — that the court agrees with the Commonwealth. In the circumstances of this case, I am not persuaded. The Commonwealth alleged that Chapman "has refused sex offender treatment" since his release from the treatment center, and for purposes of a motion to dismiss, I accept the allegation. I note, however, that the Commonwealth has made no showing that any participation was required of Chapman, or even that it was recommended to him — only that, as Dr. Joss explained, treatment "would normally be recommended" to an individual in Chapman's position.[8] Even if Chapman "refused" to participate in sex offender treatment, this cannot be probative of his present mental state. The very purpose of the 1991 determination was to free Chapman from the requirement that he be subjected to continued sex offender "treatment."

Concluding that there is probable cause to believe Chapman is sexually dangerous because he did not undergo sexual offender treatment or therapy after he was determined not sexu-

---

[7]Contrary to the court's intimation, *ante* at 24 n.16, Chapman's avoidance of sexual misconduct while in prison redounds in his favor. Chapman was convicted for crimes of pedophilia, but there were certainly opportunities for sexual misconduct while Chapman was incarcerated. The former medical director of the treatment center where Chapman was committed for thirteen years has stated that rape in prison, especially of young-looking male prisoners, is alarmingly common. See Fried, Reflections on Crime and Punishment, 30 Suffolk U. L. Rev. 681, 685-687 (1997).

[8]Due to the perverse disincentives of treatment the Commonwealth has established, many attorneys apparently routinely advise their clients not to engage voluntarily in sex offender treatment. These lawyers fear that, because their clients must waive all confidentiality rights in order to receive treatment, the frankness that such treatment requires might later be grounds for sexually dangerous person proceedings. See Bernstein, A Question of Commitment, CommonWealth (Winter 2003).

The Commonwealth's policy in this regard is especially disturbing in light of the consensus among experts that sex offenders benefit from prompt treatment during their term of incarceration. See An Overview of Sex Offender Management, United States Department of Justice Center for Sex Offender Management 7 (2002); Detaining "Sexual Predators" in the Mental Health System, National Mental Health Association (1998).

ally dangerous in 1991 is, given the circumstances, exactly the type of "arbitrary, wrongful government action" that the due process clause bars. *Foucha* v. *Louisiana,* 504 U.S. 71, 80 (1992), quoting *Zinermon* v. *Burch,* 494 U.S. 113, 125 (1990). See *Daniels* v. *Williams,* 474 U.S. 327, 331-332 (1986); *Bruno, supra* at 503; *Hill, petitioner,* 422 Mass. 147, 154-155, cert. denied, 519 U.S. 867 (1996). The court's holding allows the Commonwealth to initiate G. L. c. 123A proceedings against a defendant previously found not sexually dangerous not because he has engaged in conduct probative of sexual dangerousness, but because he has not voluntarily undergone some unspecified, nonmandatory treatment. The court's holding penalizes Chapman for violating unstated and unspecified "conditions" of his release from the treatment center, where there is no reason to believe Chapman had any reason to know of the harsh consequences his "refusal" to participate in the treatment would trigger. Under the court's holding, a prisoner released on probation from incarceration, after a determination that he is *not* sexually dangerous, may (if he is later incarcerated) be made subject to a new petition that he *is* sexually dangerous solely because of evidence that in the intervening probationary period he did not *voluntarily* engage in sex offender treatment, even without a showing that he had reason to know that he would be well advised to participate in such treatment, much less that his participation was a required condition of his release. In short, the court allows the Commonwealth to posit, with no notice to a defendant, post hoc, novel terms of release, and then to penalize the defendant for failing to comply with those conditions.

None of the Commonwealth's "new" evidence is probative of Chapman's sexual dangerousness. The motion judge correctly, in my view, concluded that the Commonwealth's 2004 petition is based "only" on factors that were present in 1991, and correctly concluded that the Commonwealth had not met its burden required by G. L. c. 123A, § 12 (*b*).[9]

I well recognize that the 1991 judicial determination concern-

---

[9]A single justice in the Appeals Court incorrectly reasoned that the motion judge had concluded "that the Commonwealth had not made the 'sufficient showing' required by [G. L. c. 123A, §] 12 (*e*)." General Laws c. 123A, § 12 (*e*), allows for temporary commitment of potentially sexually dangerous persons scheduled for release from prison, "prior to" a probable cause

ing Chapman's sexual dangerousness resulted in his return to prison from the treatment center, while the same determination today would release Chapman to the public at large. We have rejected a claim of significant distinction between the former and current definitions of sexual dangerousness as provided in G. L. c. 123A. *Dutil, petitioner*, 437 Mass. 9, 14-15 (2002).[10] Here the court could have considered that the different *effect* of a determination of Chapman's lack of sexual dangerousness today, as compared to in 1991, justifies today's decision. Cf. *People* v. *Carmony*, 99 Cal. App. 4th 317, 322-323 (2002) (California statute allowing commitment of "sexually violent predator[s]" sufficiently dissimilar from earlier statute allowing commitment of "mentally disordered sex offenders" that defendant could not invoke collateral estoppel). But, if *Travis*

---

determination. When the motion judge dismissed the petition, there was no probable cause determination still to come, and she could have acted (and did act) pursuant to G. L. c. 123A, § 12 (*b*), only. In contrast, now having concluded that the Commonwealth has in fact alleged sufficient facts and that the matter may proceed to a probable cause determination, it is entirely proper for this court to order, pursuant to G. L. c. 123A, § 12 (*e*), that Chapman be temporarily committed to the treatment center pending the probable cause determination.

[10]Prior to the 1999 amendments, G. L. c. 123A, § 1, as appearing in St. 1993, c. 489, § 1, defined a "[s]exually dangerous person" in part as:

"[A]ny person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of sixteen years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

Section 1, as amended through St. 2004, c. 66, §§ 1-6, now states:

" 'Sexually dangerous person', any person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility; (ii) charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility; or (iii) previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

and *Bruno* are to have continued vitality, as both the Federal and State Constitutions command, I would reject the Commonwealth's effort to relitigate the 1991 determination.

Chapman's crimes were multiple and serious. It may be tempting to keep him incarcerated, rather than place any child at any conceivable risk if he is released. But Chapman did not receive a life sentence. He has served the full, lengthy sentence imposed on him. It may be that a longer criminal sentence was warranted in his case. "The point, however, is not how long [Chapman] and others like him should serve a criminal sentence. With his criminal record, after all, a life term may well have been the only sentence appropriate to protect society and vindicate the wrong. The concern instead is whether it is the criminal system or the civil system which should make the decision in the first place." *Kansas* v. *Hendricks*, 521 U.S. 346, 372-373 (1997) (Kennedy, J., concurring).