FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 30

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Detention of: | No. 45120-4-II |
| MARK ROBINSON, | |
| Appellant. | UNPUBLISHED OPINION |

MAXA, J. — Mark Robinson appeals his order of civil commitment as a sexually violent predator (SVP). He argues that there was insufficient evidence that he was likely to engage in predatory acts of sexual violence if not confined in a secure facility, and therefore that the evidence did not support the jury's verdict that he is an SVP. We disagree and affirm Robinson's civil commitment as an SVP.

## FACTS

From the early 1990s until his arrest for rape in 2000, Robinson worked as a truck driver. Robinson admitted that he raped at least 12 women beginning in the late 1990s, many of whom were prostitutes. He would pick up his victims in his truck, subdue them with threats of force, and rape them.

In June 2000, Robinson picked up a female hitchhiker in his truck and raped her. Robinson was arrested and charged with first degree rape and second degree kidnapping. He pled guilty and was sentenced to 143 months in prison. He participated in treatment for 12

months while incarcerated, but made minimal progress. Near the end of his sentence in May 2012, the State petitioned the trial court to civilly commit Robinson as an SVP.

At trial, the State presented evidence relating to the likelihood that Robinson would engage in predatory acts of sexual violence if not confined in a secure facility. Robinson testified in his deposition and at trial about the rape for which he was convicted and admitted to raping at least 12 women. A police officer who investigated and arrested Robinson testified that Robinson claimed to have raped some 60 women over a five-year period.

Both the State and Robinson called experts to provide opinions as to whether Robinson was likely to reoffend in the future. The State's expert, Dr. Mark Patterson, testified that he had diagnosed Robinson with the mental abnormalities of sexual sadism and frotteurism. He further testified that in his professional opinion Robinson was likely to commit additional violent sexual offenses if released into the community, and that continued supervision and treatment would not adequately diminish this likelihood. Dr. Patterson testified that he applied actuarial instruments and his clinical judgment in assessing Robinson's risk of reoffending.

Robinson's expert witness, Dr. Jan Looman, favored a stricter actuarial approach that did not take into account clinical judgment. He offered the jury a different actuarial assessment of Robinson's risk of reoffending, as well as his opinion on the shortcomings of Dr. Patterson's methods. Dr. Looman also testified that, in his opinion, Robinson's sexual sadism was in remission.

After trial, the jury returned a verdict that Robinson was an SVP. The trial court subsequently issued an order of commitment, which Robinson now appeals.

ANALYSIS

Robinson argues that there was insufficient evidence to support the finding that he was likely to engage in predatory acts of sexual violence if not confined in a secure facility, as required under RCW 71.09.020(18). We disagree.

A.    STANDARD OF REVIEW

We treat sufficiency challenges to SVP civil commitment determinations like sufficiency challenges to criminal convictions. *In re Det. of Thorell*, 149 Wn.2d 724, 744, 72 P.3d 708 (2003). Under the applicable standard of review, we view the evidence in the light most favorable to the State and ask whether the evidence so viewed was "sufficient to persuade a fair-minded, rational person that the State has proved beyond a reasonable doubt that [the respondent] is a sexually violent predator." *State v. Hoisington*, 123 Wn. App. 138, 147, 94 P.3d 318 (2004). We defer to the trier of fact on determinations of witness credibility and evidentiary weight. *In re Det. of Sease*, 149 Wn. App. 66, 80, 201 P.3d 1078 (2009).

B.    LEGAL PRINCIPLES

Under RCW 71.09.060, to civilly commit Robinson the State had to prove beyond a reasonable doubt that he was a sexually violent predator within the meaning of the commitment statute. *In re Det. of Post*, 170 Wn.2d 302, 309-10, 241 P.3d 1234 (2010). RCW 71.09.020(18) defines a "[s]exually violent predator" as

> any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

3

This definition contains three elements that the State was required to prove beyond a reasonable doubt in order to civilly commit Robinson as an SVP:

> (1) that the respondent "has been convicted of or charged with a crime of sexual violence," (2) that the respondent "suffers from a mental abnormality or personality disorder," and (3) that such abnormality or disorder "makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."

*Post*, 170 Wn.2d at 309-10 (quoting RCW 71.09.020(18)).

Robinson does not contest the first two elements, but argues that the State failed to present sufficient evidence supporting the third: that he was "likely to engage in predatory acts of sexual violence if not confined in a secure facility" as required in RCW 71.09.020(18).

A person is "likely to engage in predatory acts of sexual violence" within the meaning of RCW 71.09.020(18) if "the person more probably than not will engage in such acts if released unconditionally from detention on the sexually violent predator petition." RCW 71.09.020(7). The State's evidence must be sufficient to prove beyond a reasonable doubt that the person to be committed has "serious difficulty controlling behavior." *Thorell*, 149 Wn.2d at 744-45.[1] But the evidence "need not rise to the level of demonstrating the person is completely unable to control his or her behavior." *Id.* at 742.

C.   SUFFICIENCY OF THE EVIDENCE

1.   Evidence Regarding Robinson's Behavior

The State presented evidence regarding Robinson's past and present behavior from which the jury could infer that Robinson was likely to engage in future predatory acts of sexual

---

[1] If the person is not totally confined at the time of the petition, RCW 71.09.020(9) also requires that the likelihood be evidenced by a recent overt act. This requirement is inapplicable here because Robinson was totally confined.

4

violence if not confined in a secure facility. The evidence, viewed in the light most favorable to the State, showed that Robinson had a history of predatory sexual violence and that he was unable to control the other factors that led him to offend.

First, the State presented evidence of Robinson's past violent sexual offenses. The jury heard Robinson's deposition and trial testimony, during which he described the rape for which he was convicted and admitted to raping at least 12 women. The jury also heard testimony from the police officers who investigated and apprehended Robinson. One officer testified that Robinson previously claimed to have raped some 60 women over a five-year period. The same officer said that he found in Robinson's truck a "rape kit" of tools to subdue unwilling sex partners. Report of Proceedings (RP) at 179. Overall, it was clear from the evidence presented that Robinson had committed numerous uncharged predatory acts of sexual violence.

"In assessing whether an individual is a sexually violent predator, prior sexual history is highly probative of his or her propensity for future violence." *In re Pers. Restraint of Young*, 122 Wn.2d 1, 53, 857 P.2d 989 (1993). The jury could reasonably infer from Robinson's established history of offenses that he was at a high risk of reoffending if he was unable to control the factors that previously led him to offend.

Second, the State presented evidence that Robinson had not learned to control the factors that previously led him to offend. Robinson admitted in his deposition that he needs ongoing treatment for sexual deviancy. He stated that he believed it was risky for him to be around women in general, and explained that his support system in the community would be limited to former cell mates and possibly family members. He also admitted that he had not fully complied with the requirements of his treatment program while incarcerated. When cross-examined at

5

trial, Robinson said that his urges to rape women will "never go away completely" and that while he no longer experienced those urges he could not say how long it had been since he last felt them. From this evidence, the jury could find that Robinson had poor control over his mental illness and the lifestyle factors that led him to violent rape.

2. Dr. Patterson's Testimony

Dr. Patterson testified that he assessed Robinson's risk of reoffending, using a combined actuarial-clinical approach. First, Dr. Patterson assessed Robinson's static risk factors for reoffending, which do not change over time, using actuarial instruments based on studies associating those risk factors with reoffending. These actuarial tests predicted somewhere between a 15 percent and a 59 percent likelihood that Robinson would reoffend within 10 years. Dr. Patterson testified that the actuarial results should not be construed as clear percentages of risk. Instead, they should be combined with an analysis of a person's score relative to the scores of other offenders to determine whether that person's risk is greater or lower than the population risk indicated by the actuarial test. And Dr. Patterson testified that the results generally underestimate a person's lifetime risk of reoffending because they are based on studies that were limited to specified time periods.

Second, Dr. Patterson testified that he also utilized his clinical judgment in assessing Robinson. Dr. Patterson explained that he structured his clinical assessment of Robinson's dynamic risk factors, which can change over time, using an instrument called the Structured Risk Assessment - Forensic Version (SRA-FV). Among the dynamic risk factors were Robinson's proclivity for sexualized violence, sexual preoccupation, callousness, impulsiveness, resistance to rules, and dysfunctional coping strategies. Dr. Patterson testified that he used the SRA-FV to

6

determine the proper reoffending risk indicated by the actuarial tools and also as a measurement of his overall clinical assessment of Robinson's "long-term vulnerabilities for sexual reoffending." RP at 306. Dr. Patterson's clinical assessment supported his opinion that Robinson's risk was actually greater than that indicated by the static risk factor actuarial instruments.

Based on this analysis, Dr. Patterson testified that in his professional opinion, Robinson was likely to commit another violent sexual offense if released into the community. He also concluded that continued supervision and treatment would not adequately diminish this likelihood.

### 3. Robinson's Arguments

Robinson argues the evidence against him was insufficient to support the jury's verdict that he was an SVP because Dr. Patterson's testimony does not prove beyond a reasonable doubt that he was likely to engage in predatory acts of sexual violence if not confined in a secure facility for several reasons.

First, Robinson argues that the actuarial tools Dr. Patterson utilized did not provide sufficient support for Dr. Patterson's opinion that Robinson was likely to reoffend. He claims that the tools are irrelevant because they can only project whether a person will reoffend at some point in the future and therefore do not provide evidence of the current risk of reoffending. But Robinson seems to misconstrue the nature of the actuarial tests. The tests provide a rough estimate of the current risk that a person will reoffend *within a certain time period*. Robinson seems to confuse this with the future risk of reoffending *at certain time intervals*.

7

Moreover, even if Robinson's characterization of the tests was correct, our Supreme Court has held that the State need not prove that a person will offend within any particular time period in order to establish beyond a reasonable doubt that the person is likely to engage in predatory acts of sexual violence if not confined in a secure facility. *In re Det. of Meirhofer*, No. 89251-2, 2015 WL 596928, at *5 (Wash. Feb. 12, 2015); *In re Det. of Moore*, 167 Wn. 2d 113, 124, 216 P.3d 1015 (2009). Therefore, Dr. Patterson's testimony about Robinson's risk of reoffense in the future, based on the actuarial tests, provided substantial evidence supporting the third element of the SVP definition.

Second, Robinson argues that the results of the actuarial instruments themselves did not support a finding beyond a reasonable doubt that he was likely to reoffend if not confined. Robinson states that the actuarial tests as administered by Dr. Patterson predicted somewhere between a 15 percent and a 59 percent likelihood that Robinson would reoffend within 10 years, and that statistical probability does not constitute proof beyond a reasonable doubt.

Robinson is correct that a probability of up to 59 percent would not constitute proof beyond a reasonable doubt that something *will actually occur*. But that is different from saying that a probability of up to 59 percent cannot show beyond a reasonable doubt that something is *likely*. In fact, a statistical probability over 50 percent indicates that something is likely. As a result, the State must only prove that the probability of the defendant's reoffending exceeds 50 percent. *In re Det. of Brooks*, 145 Wn.2d 275, 297-98, 36 P.3d 1034 (2001), *overruled on other grounds by Thorell*, 149 Wn.2d 724. Viewed in the light most favorable to the State, a statistical probability of up to 59 percent supports a belief beyond a reasonable doubt that Robinson was likely to reoffend.

8

Third, Robinson asserts that Dr. Patterson's opinion accorded improper weight to the dynamic risk factors and his own clinical judgment when the standardized actuarial assessment of Robinson's static risk factors seemed to show a fairly low likelihood that Robinson would reoffend. However, experts may resort to their clinical judgment when assessing the risk that a sexual offender will reoffend. *See Meirhofer*, 2015 WL 596928, at *2, *5; *Thorell*, 149 Wn.2d at 755-56. This is often necessary because actuarial tests alone tend to underestimate the risk that an individual will reoffend. *Meirhofer*, 2015 WL 596928 at *2 n.4. Dr. Patterson testified that his clinical assessment of Robinson informed his opinion that Robinson was likely to reoffend. He combined this assessment with his use of the SRA-FV to assess Robinson's dynamic risk factors.[2] In his judgment, Robinson was more likely to reoffend than the actuarial results alone suggested. When viewed in the light most favorable to the State, Dr. Patterson's testimony supported the jury's finding that Robinson was likely to engage in predatory acts of sexual violence if not confined in a secure facility.

Fourth, Robinson argues that "Dr. Patterson's testimony was largely a reflection of his view that sexual sadism cannot go into remission." Br. of Appellant at 19. Dr. Patterson did not testify to holding any such view. But regardless of his views on that matter, he indicated that in his clinical judgment Robinson remained a sexual sadist based on his assessment of Robinson's

---

[2] Robinson appears to suggest that Dr. Patterson's use of the SRA-FV for this purpose is a novel and not generally accepted technique in the field of forensic psychology. This argument suggests that Dr. Patterson's testimony was inadmissible under the *Frye* test. *See, e.g., State v. Green*, 182 Wn. App. 133, 148-49, 328 P.3d 988, *review denied*, 337 P.3d 325 (2014); *see also Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). But Robinson did not challenge Dr. Patterson's testimony on *Frye* grounds at trial and does not argue on appeal that the court erred in admitting it.

recent fantasies and past actions. He was cross-examined at length on the topic, and Dr. Looman provided an alternative opinion that Robinson's sexual sadism was in remission. For purposes of analyzing the sufficiency of the evidence, we presume that the jury credited Dr. Patterson's opinion over Dr. Looman's opinion. Regardless of whether Dr. Patterson believed sexual sadism could go into remission, Dr. Patterson's testimony supported a finding that Robinson's sexual sadism was not in remission.

Finally, Robinson argues that Dr. Patterson's opinion that Robinson was likely to reoffend was based primarily on his diagnosis of sexual sadism. But as Dr. Patterson made clear during his testimony, he considered a number of static and dynamic risk factors and assessed the etiology of Robinson's mental abnormality, Robinson's lack of an adequate support system, and Robinson's failure to fully engage in treatment. Robinson dismisses this clinical assessment as a "purely arbitrary or speculative" exercise, Br. of Appellant at 19, but Dr. Patterson based his judgment on his review of the case records and his interviews with Robinson.

## CONCLUSION

The State provided evidence regarding Robinson's prior sexual history and his current inability to control the factors that previously led him to offend. Dr. Patterson testified that based on actuarial tools and his clinical assessment, in his professional opinion Robinson was likely to commit another violent sexual offense if released into the community. Viewing the evidence in the light most favorable to the State, we hold that there was sufficient evidence to support the jury's finding that Robinson was likely to engage in predatory acts of sexual violence if not confined in a secure facility. Accordingly, we reject Robinson's sufficiency of the evidence claim.

45120-4-II

We affirm Robinson's civil commitment as an SVP.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, C.J.

LEE, J.

11