**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 80857-5-I |
| | ) | |
| RICKY LEE LEWIS, | ) | DIVISION ONE |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |

MANN, C.J. — Ricky Lewis appeals a jury finding that he was a sexually violent

predator (SVP) who was likely to reoffend if not placed in a secure setting.  Lewis

argues that (1) the trial court abused its discretion by admitting evidence about prior

alleged crimes where he was never charged, acquitted, or where the charges were

reduced; (2) that the trial court abused its discretion in not admitting evidence that the

State could file a future SVP petition were Lewis freed from custody, and (3) that

prosecutorial misconduct during opening statement requires reversal.  We affirm.

<u>FACTS</u>

A.  <u>Background</u>

Lewis was scheduled to be released from prison in June 2018 after serving an

84-month sentence for assault in the second degree and two counts of unlawful

imprisonment.  The crime was originally charged as rape in the first degree and

Citations and pin cites are based on the Westlaw online version of the cited material.

kidnapping in the first degree. Lewis entered an Alford[1] plea to the reduced charges.

Based on previous rape convictions, on June 25, 2018, the State filed a petition alleging

Lewis was an SVP[2] in accordance with chapter 71.09 RCW. The State supported its

petition with a forensic psychological evaluation prepared by Harry Hoberman, Ph.D.,

L.P. The psychological evaluation documented an extensive history of Lewis sexually

assaulting both underage girls and young adult women over the course of several

decades. Many of the incidents resulted in reports to the police and arrests, but only a

few resulted in criminal charges. Four incidents resulted in convictions—three pursuant

to plea bargains involving reduced charges, and one conviction by a jury as charged for

rape in the second degree. Other evidence documented other sexual assaults that

were never reported to the police. Lewis was acquitted twice at trial—once for second

degree rape, and once for second degree assault with sexual motivation. Dr.

Hoberman's evaluation identified Lewis's "mental abnormalities"[3] as defined by the SVP

statute. At the time, Lewis was serving his most recent sentence for the crimes

involving B.P. and C.S.

B. Trial

Before trial, Lewis moved in limine to prohibit the State from mentioning or

presenting evidence that Lewis was charged with crimes which differ from his actual

conviction(s) or where he was found not guilty by a jury. Lewis argued that introduction

---

[1] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] A "sexually violent predator" is "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18).

[3] A "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(8).

of this evidence would allow the State to use the civil commitment as a substitute for criminal convictions that did not occur.

Lewis also moved in limine to present evidence that, were he released, the State could file another SVP petition in the future if he committed a "recent overt act"[4] in the community. Lewis argued that the evidence would demonstrate a deterrent to engage in further sexual misconduct.

At oral argument, Lewis's attorney acknowledged the admissibility of the evidence regarding crimes that did not result in convictions, but clarified that her motion was focused on precluding improper arguments by the State. The trial court confirmed that the State would not be arguing that Lewis should be punished now for crimes that he was not sufficiently punished for in the past, stating:

> THE COURT: . . . It does seem and I think acknowledges that cases of this nature, references to past sentences, past charges, are inevitable. The State has acknowledged that it would be improper for it to argue that this case should be used to punish for other cases.
>
> I see [Lewis's attorney] acknowledge that now. The court is not going to grant that kind of argument if it is offered. But I'm not going to preclude evidence through experts regarding past sentences, past charges, past acts. That seems to be the nature of this type of proceeding, and I can't exclude that evidence.

The court denied Lewis's motion.

The trial court also denied Lewis's motion to introduce evidence that the State could file an SVP petition in the future because of "the possibility of jury confusion" and

---

[4] A "recent overt act" is "any act, threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act or behaviors." RCW 71.09.020(12).

"time spent exploring what is meant by an 'overt act'" would be "distracting, confusing, and highly speculative in the context of this case."

Lewis's first trial ended in a mistrial when the jury could not agree on a verdict. A second trial began in November 2019. Evidence at trial included the following details about Lewis's history of sexual assaults.

In 1980, when Lewis was 22, he impregnated 12-year-old L.R., sexually assaulted her, isolated her in his room, and photographed her nude. The incident was never reported to law enforcement. Dr. Hoberman explained that the incident was relevant because it demonstrated Lewis's nearly lifelong fixation on nonconsensual sex.

Approximately three years later, Lewis had a relationship with C.G., then 16 years old. Hoberman explained that C.G. reported to the police that when she attempted to end the relationship, Lewis smeared dog feces onto her face. While not sexual, Dr. Hoberman explained that it was relevant as an example of Lewis's sadistic behavior. Lewis admitted having an argument with C.G. during which "[s]ome feces accidentally got on her shirt," but denied he smeared any on her face.

In 1985, Lewis was convicted of his first sex offense for the statutory rape of 15-year-old A.A. Lewis drugged A.A. at a party, took her home, struck her in the face, forced her to perform oral sex, and had forcible intercourse with her. Lewis was originally charged with forcible second degree rape, but the charge was dropped as part of a plea agreement. Lewis claimed that A.A. had sex with him willingly and that she lied to him about her age. Lewis served six months for his conviction.

In 1988, when Lewis was 30 years old, he met 14-year-old J.Sm. through mutual acquaintances. J.Sm. testified at the SVP trial that they were eating Jack-in-the-Box on

the backseat of his van, where he then forcibly kissed her, pulled her shirt open, rubbed his penis between her breasts, ejaculated on her neck, and then handed her some napkins and told her to clean herself up. Lewis explained that he and J.Sm. had only engaged in "heavy petting," but that she did not resist. After J.Sm. reported the incident, no charges were filed.

In 1990, Lewis was arrested for sexual assaults against 12-year-old B.W. and 14-year-old M.H. Dr. Hoberman described B.W.'s report that Lewis bound her hands with her underwear, placed her into a closet, and raped her at knifepoint. Dr. Hoberman described M.H.'s report that Lewis forced her to perform oral sex at gunpoint. Lewis denied the interactions because he was not attracted to B.W. due to her bad complexion, and that M.H. had intercourse with his friend, but not him. This incident was reported to the police, Lewis was arrested, but the case was not referred to the prosecutor's office for criminal charges.

In 1992, 20-year-old T.T. reported to police that she had been raped by a man later identified as Lewis. T.T. testified at the SVP trial. She explained that after she initially rebuffed a pass by Lewis, he agreed to drive her from the house he was staying at back to Pioneer Square. Lewis was driving T.T. on the highway when he demanded she give him oral sex. T.T. attempted to open the door while the vehicle was moving, but Lewis pulled her back into the car by her hair. T.T. did what Lewis asked. T.T. reported the incident to the police.

Detective Cloyd Steiger investigated the incident involving T.T. In an interview with Steiger, Lewis claimed that he was using drugs to trick the cocaine-addicted T.T.

into sex, and because he had scammed her, she reported the sex as rape. The case resulted in acquittal.

Two months following Lewis's acquittal in the T.T. case, R.M. reported to the police that Lewis raped her. R.M. testified at the SVP trial. Lewis provided R.M. with heroin and asked for a massage in return. Lewis then grabbed R.M.'s arm, twisted it behind her back, and demanded she masturbate him and perform oral sex.

Four days following the occurrence with R.M., Lewis assaulted J.Su. by putting her in a choke hold and demanding that she give him oral sex in exchange for cocaine; she managed to run away. Steiger investigated both R.M. and J.Su.'s cases. When he questioned Lewis, Lewis stated that the women were "cokeheads" and "he was just trying to help them."

R.M. and J.Su.'s cases were charged and tried together. Lewis was acquitted of second degree assault with sexual motivation in J.Su.'s case; he was convicted of forcible second degree rape as charged in R.M.'s case. Dr. Hoberman relied on both cases in forming his opinion, because both incidents fit Lewis's pattern of coerced sexual behavior and the infliction of physical and psychological suffering on his victims.

In March 2013, police arrested Lewis for assaulting 19-year-old C.S. and refusing to allow her to leave his trailer. Lewis provided police with a camcorder containing a video of C.S. performing oral sex on him. On the same camcorder, police found a video with B.P. B.P. became upset with Lewis when he tried to pay for intercourse in coins instead of bills. In response, Lewis slapped her, berated her, and shoved his genitals in her face, after which she acquiesced to having intercourse with him.

Lewis entered an <u>Alford</u> plea to assault in the second degree and unlawful imprisonment for his conduct with B.P., and unlawful imprisonment for his conduct with C.S. He denied unlawfully imprisoning C.S., stating that he refused to pay for his services because he failed to climax. Lewis claimed that the videos were part of a documentary about women working on Aurora Avenue called "The Girls on 99," which he had planned to submit to the Seattle International Film Festival.

Based on Lewis's history of sexual assault towards young women and minors, as well as other behaviors, pieces of evidence, and psychological evaluations, Dr. Hoberman diagnosed Lewis with a paraphilic disorder that he described as: 1) other specified paraphilic disorder focused on nonconsent, coercion, and rape; or 2) sexual sadism disorder. Dr. Hoberman also diagnosed Lewis with two overlapping personality disorders: 1) antisocial personality disorder and 2) narcissistic personality disorder.

Dr. Hoberman noted that coerced sexual activity "is an area of a particular sexual interest or source of particular sexual arousal for Mr. Lewis such that he has regularly or persistently engaged—appeared to engage in that behavior over time." Dr. Hoberman also identified that Lewis has a "victim type"—specifically girls who were runaways or estranged from their families, girls and women with drug issues, and prostitutes, all whom are marginalized and unlikely to reach out to law enforcement. Dr. Hoberman concluded that "what seems extremely clear . . . is that there is a pattern of behavior of engaging in isolating, vulnerable or marginalized females," and subjecting them to coerced, nonconsensual, and sadistic behavior.

The jury ultimately found Lewis to be an SVP. The trial court ordered Lewis to be civilly committed and placed him in the custody of the Washington State Department of Social and Health Services. Lewis appeals.

## ANALYSIS

A. Evidentiary Rulings

1. Admission of Evidence of Prior Alleged Crimes

Lewis first argues that the trial court erred in admitting evidence about prior alleged crimes of which he was acquitted, where the charges were reduced, and where the State did not file charges.[5] In particular, Lewis challenges the admission of testimony from J.Sm. (no charges) and T.T. (acquittal), as well as Detective Steiger's testimony about two cases he investigated that resulted in acquittals (T.T. and J.Su.). Lewis does not contest Dr. Hoberman's use of the alleged prior conduct in preparing his analysis, and agrees that the trial court gave proper limiting instructions during Dr. Hoberman's testimony. Instead, he alleges that the trial court violated his right to due process and abused its discretion under ER 403 in allowing the direct testimony. We disagree.

### Due Process

A challenge to denial of due process is a legal question that we review de novo. State ex rel. Washington State Public Disclosure Com'n v. Permanent Offense, 136 Wn. App. 277, 293, 150 P.3d 568 (2006).

---

[5] As a preliminary matter, the State argues that Lewis waived any evidentiary objection because his trial counsel's motion in limine concerned the characterization of the State's arguments, not the admission of evidence. Because Lewis's motion at trial directly references the admission of evidence, we recognize his objection and address his argument on appeal.

We first note that SVP proceedings are "resolutely civil in nature." In re Detention of Reyes, 184 Wn.2d 340, 347-48, 358 P.3d 394 (2015). Accordingly, constitutional trial rights expressly afforded to criminal defendants by the Fifth and Sixth Amendments do not apply in SVP cases. Reyes, 184 Wn.2d at 347-48 (citing multiple cases).[6] While individuals facing SVP commitment are entitled to due process of law, due process is a "flexible concept." In re Detention of Stout, 159 Wn.2d 357, 369-70, 150 P.2d 86 (2007). "At its core is a right to be meaningfully heard, but its minimum requirements depend on what is fair in a particular context." Stout, 159 Wn.2d at 370 (citing Mathews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

Here, there is no dispute that Lewis was in any way denied the right to be heard. He was represented by counsel throughout the proceedings. His counsel was afforded the right to cross examine each witness. And Lewis testified on his own behalf and was able to dispute the witnesses' allegations.[7] Lewis was not denied due process.

### ER 403

"We review the trial court's evidentiary rulings for abuse of discretion and defer to those rulings unless no reasonable person would take the view adopted by the trial court." State v. Clark, 187 Wn.2d 641, 648, 389 P.3d 462 (2017). Relevance of evidence under ER 403 is soundly within the trial court's discretion. State v. Rice, 48

---

[6] Lewis cites to State v. Bartholomew, 101 Wn.2d 631, 683 P.2d 1079 (1984) in support of his claim that misconduct that did not result in a conviction should not be admitted because it is "unreliable." Bartholomew, however, is a death penalty case and not applicable to an SVP proceeding. Moreover, the issue in Bartholomew was the constitutionality of a statute that allowed evidence of prior misconduct to be admitted during the penalty phase "regardless of its admissibility under the rules of evidence," which the court found to be in violation of the due process and cruel punishment clauses of the state constitution. Bartholomew, 101 Wn.2d at 638-39. We agree with the State that Bartholomew is not on point.

[7] For example, during his testimony at the SVP trial, Lewis admitted having sex with T.T. in his car, but claimed T.T. willingly offered sex in exchange for a ride back to Pioneer Square. Lewis also admitted he had engaged in what he called "heavy petting" with J.Sm., but he claimed that she did not resist. He also claimed that she lied about her age.

Wn. App. 7, 11, 737 P.2d 726 (1987). "The trial judge has broad discretion in balancing the probative value of the evidence against its possible prejudicial impact." Rice, 48 Wn. App. at 11. Thus, this court will only reverse a trial court's decision on the relevance and prejudicial effect of the evidence upon a manifest abuse of discretion. State v. Lee, 188 Wn.2d 473, 486, 396 P.3d 316 (2017). Abuse of discretion is "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Rice, 48 Wn. App. at 11.

The trial court did not abuse its discretion in allowing the testimony from J.Sm., T.T., and Detective Steiger regarding Lewis's prior sexual misconduct that did not result in a conviction. It is well established that testimony from an offender's prior victims is admissible in SVP proceedings. "The manner in which the previous crimes were committed has some bearing on the motivations and mental states of [the offenders], and is pertinent to the ultimate question . . . of whether they are sexually violent predators under the terms of the [s]tatute." In re Det. of Young, 122 Wn.2d 1, 53, 857 P.2d 989 (1993). This includes evidence of past criminal sexual behavior that did not result in a conviction. Stout, 159 Wn.2d at 378.[8]

The probative value of victim testimony outweighs its potential for unfair prejudice under ER 403 because the evidence bears directly on "the mental state of the alleged SVP, the nature of [their] sexual deviancy, and the likelihood that [they] will commit a

---

[8] Lewis asserts that Stout is not controlling because it addressed the issue in terms of collateral estoppel rather than ER 403. While this may be true, it is a distinction without import. The Stout court clearly distinguished the difference in admissible evidence in a criminal proceeding as opposed to an SVP proceeding and concluded that evidence of prior acts where the defendant was acquitted are admissible in an SVP proceeding in contrast to a criminal proceeding. Stout, 159 Wn.2d at 378.

crime involving sexual violence in the future." In re Det. of Turay, 139 Wn.2d 379, 400-02, 986 P.2d 790 (1999).

The State had the burden of demonstrating that Lewis "suffers from a mental abnormality or personality disorder which makes [him] likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). Evidence of Lewis's prior misconduct, regardless of conviction, is probative in the determination of Lewis's behavior, abnormalities or disorders, and his likelihood to reoffend if not confined for treatment. The trial court did not abuse its discretion in allowing testimony regarding such misconduct.

### 2. Future SVP Petition

Lewis argues that the trial court abused its discretion under ER 403 by excluding evidence that if he were released the State could bring another SVP proceeding if he commits a more "recent overt act." We disagree.

Lewis relies on In re Det. of Post, 170 Wn.2d 302, 241 P.3d 1234 (2010), to support his claim that a future SVP petition is relevant. But Post does not stand for the proposition that evidence of a potential future SVP petition is always admissible. Instead, the Post court held that the possibility of a "recent overt act" petition is a condition that "would exist" upon an offender's release, and evidence of that possibility may be relevant in an SVP trial. Post, 170 Wn.2d at 316-17. The court explained that the evidence may be relevant because the offender's knowledge that a future petition could be filed "may well serve as a deterrent" and may "diminish the likelihood of [their] committing another predatory act of sexual violence" in the community. Post, 170

Wn.2d at 316-17. But, while possibly relevant, the court expressly stated that it was not deciding that such evidence is always admissible:

> We do not decide whether the evidence was admissible, we merely correct the Court of Appeals' misapprehension and hold that the evidence is relevant and does not violate RCW 71.09.060(1). ER 403 issues of unfair prejudice and confusion of the issues are best addressed in the first instance by the trial court, subject to review for abuse of discretion.

Post, 170 Wn.2d at 317.

In this case, the trial court considered the impact of introducing the evidence at trial and determined that it was more likely to confuse the jury:

> I'm going to deny [Lewis's] motion. It seems to me that although relevant in the strictest of terms, the possibility of jury confusion, inordinate time spent exploring what is meant by "overt act" and what would need to be invoked if an overt act was alleged and what it actually means, is distracting, confusing and highly speculative in the context of this case. We are talking about potential future acts and potential future punishment for potential future acts. It just seems like we are getting very near the head of a pin there, and I'm going to deny the motion.

We cannot say that the trial court's decision was manifestly unreasonable or an abuse of discretion.

### 3. Harmless Error

The State asserts that, were any evidentiary errors to have occurred, such errors are harmless. The State is correct. Evidentiary error is harmless if, within reasonable probability, it did not materially affect the verdict. In re Det. of West, 171 Wn.2d 383, 410, 256 P.3d 302 (2011). Here, even if the trial court excluded the testimonies of J.Sm., T.T., and Detective Steiger, and if the trial court included the possibility of a future SVP petition, the errors would be harmless.

The evidence of Lewis's ongoing pattern of sexually violent behavior was overwhelming. The evidence included R.M.'s testimony; certified court records establishing Lewis's criminal sexual conduct with L.R., B.P., and C.S.; a videotape of Lewis slapping, berating, sexually abusing, and humiliating B.P.; thousands of pages of describing Lewis's sexual abuse of girls and women that Dr. Hoberman used to form his expert opinion; as well as Lewis's own testimony. Taking the evidence as a whole, there is no reasonable probability that the outcome of the case would have been different had J.Sm., T.T., and Steiger not testified, or if the jury had been informed that a future SVP petition were possible.

B. <u>Prosecutorial Misconduct</u>

During its opening statement, the State made the following comment:

> We're here today because for the last four decades, Ricky Lee Lewis has been sexually assaulting and abusing young women and girls in our community. He has sought out and chosen victims that people might not believe, might not hear, or might not see.

Lewis did not object to these remarks. Lewis argues that this statement constituted prosecutorial misconduct because it sought to punish Lewis for past actions. We disagree.

In order to establish prosecutorial misconduct, the defendant bears the burden of proving the conduct was both improper and prejudicial. <u>State v. Emery</u>, 174 Wn.2d 741, 759, 278 P.3d 653 (2012). We evaluate improper arguments in context of the total argument, the issues addressed in the case, and the evidence addressed in the argument. <u>State v. Stith</u>, 71 Wn. App. 14, 19, 856 P.2d 415 (1993).

Once impropriety is established, we determine whether the defendant was prejudiced under one of two standards of review. If the defendant objected at trial, he must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. Emery, 174 Wn.2d at 760. If the defendant did not object at trial, he is deemed to have waived any error, "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. Under the second, heightened standard, the defendant must show that (1) "no curative instruction would have obviated any prejudicial effect on the jury" and (2) the misconduct resulted in prejudice that "had a substantial likelihood of affecting the jury verdict." State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011).

Here, the prosecutor's statement was not improper. The opening statement that the reason for being in court was Lewis's decades of assaulting and abusing young women was accurate. Taken in context, this single statement does not imply the need to punish Lewis for past actions, but rather that his habitual behaviors have culminated in the State filing an SVP petition, the topic the jury was to consider.

Even were the prosecutor's statement improper, Lewis does not meet his burden of establishing that it rises to misconduct. Because Lewis did not object at trial, he is subject to the heightened misconduct standard. First, a limiting instruction could have cured the prosecutor's statement; it would have taken little effort to inform the jury that they were not punishing Lewis for past actions.[9] Second, given the backdrop of the trial

---

[9] Additionally, the trial court specifically instructed the prospective jurors that their role was "not to punish or hold Lewis accountable; rather [their] role would be to decide based solely on the evidence presented during the trial whether Lewis currently meets the definition of [an SVP]."

and evidence presented, it is unlikely that a single statement had a substantial likelihood of affecting the jury verdict.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Chun, J._          _Smith, J._